1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10
11

EDWARD FONTES, an individual, on behalf of himself; WILLIAM BECKMAN, an individual, on behalf of himself, a class of persons similarly situated, and the general public,

12
13
14

Plaintiffs,

15

v.

16

HERITAGE OPERATING, L.P., a Delaware Limited partnership; AMERIGAS, a Pennsylvania corporation; and DOES 1 through 100, inclusive,

17
18
19

Defendants.

Case No.: 14cv1413-MMA (NLS)

**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT;**

[Doc. No. 49]

**GRANTING MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD**

[Doc. No. 47]

20
21
22
23
24
25
26
27
28

Plaintiff William Beckman, on behalf of himself and all others similarly situated, moves for final approval of class action settlement and for attorneys' fees, costs, and an incentive award. Doc. Nos. 49, 47. The Court held a final approval hearing on these matters pursuant to Federal Rule of Civil procedure 23(e)(2). Doc. No. 54. For the reasons set forth below, the Court **GRANTS** Plaintiff's Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees, Costs, and Class Representative Incentive Award.

//

//

### BACKGROUND

Defendants Heritage Operating, L.P. ("Heritage") and AmeriGas (collectively, "Defendants") are in the propane business. They acquire propane in large quantities from their suppliers and then deliver the propane to residential and business customers using their own propane delivery trucks. The putative Class Members are propane-purchasing customers of Heritage, which did business in Southern California through various local entities (Pro-Flame of Julian, Pro-Flame of Ramona, etc.). These entities were eventually acquired by AmeriGas.

The Pricing of propane is not regulated in California. However, in selling their propane Defendants advertised that their customers would be charged after each delivery based on the "laid-in cost" (the cost of the purchase of propane from Defendants' suppliers plus the cost of delivery in trucks to Class Members), and an additional amount that was negotiated between each Class Member and Defendants.

Plaintiff Edward Fontes filed this putative class action lawsuit against Defendants in April 2014 in California Superior Court, alleging violations of California's False Advertising Law ("FAL") and Unfair Competition Law ("UCL"). Plaintiff alleges Defendants inflated the true price of their laid-in cost to Class Members, and that Class Members were therefore overcharged for each gallon of propane they purchased.

On June 10, 2014, Defendants removed the case to this Court. On September 29, 2014, the Court granted the parties' joint motion for leave to file a second amended complaint substituting William Beckman as Class Representative in place of Edward Fontes.

Over the course of the litigation, the parties have engaged in significant investigation and informal discovery, including analysis of Defendants' consumer pricing in ten sample districts in California. On May 26, 2015, the parties engaged in a full-day private mediation before The Honorable Edward A. Infante (Ret.) in San Francisco. The parties reached a settlement at the mediation, and engaged in confirmatory discovery before executing a formal settlement agreement.

The Court granted preliminary approval of the class action settlement on November 23, 2015. Doc. No. 45. Plaintiff filed his Motion for Attorneys' Fees, Costs, and Class Representative Incentive Award on February 5, 2016 (Doc. No. 47), and his Motion for Final Approval of Class Action Settlement on February 29, 2016 (Doc. No. 49).

## DISCUSSION

## I. Overview of the Settlement

### A. Settlement Class

The Settlement Class is defined as all Heritage customers in California who: (1) purchased propane at any time between January 1, 2008 and August 31, 2012 (the "Class Period"); (2) did not purchase propane from Defendants following the implementation of an arbitration agreement which became effective on September 1, 2012; and (3) were assigned a price code based in part on Heritage's laid-in cost. The Class excludes two customers who were demonstrably undercharged, and the members of a particular Homeowners Association who did not individually contract with defendants.

The parties have identified 706 Class Members. The Class members are divided into a "High Volume" Class (the seven members who each purchased over 35,000 gallons of propane), and the "Remaining" Class (699 members who purchased less than 35,000 gallons of propane).

### B. Settlement Terms

The proposed settlement creates a non-reversionary common fund of $550,000. Under the terms of the Settlement Agreement, the seven members of the High Volume Class who purchased more than 35,000 gallons of propane during the Class Period will receive approximately 75% of their calculated net overcharges. The balance of the settlement fund will then be distributed to the 633[1] members of the Remaining Class who

---

[1] Ultimately, the parties were unable to locate 66 of the 706 Class Members despite using all reasonable efforts, even above and beyond what was called for in the Settlement

purchased fewer than 35,000 gallons of propane during the Class Period on a pro rata basis. Based on an average overcharge of 32 cents per gallon, as determined by the parties in discovery, the Remaining Class Members will receive approximately 84% of their calculated net overcharges as a result of this settlement.

Pursuant to the terms of the Settlement Agreement, the parties appointed CPT Group, Inc. as the Claims Administrator. The Claims Administrator mailed notice of this class action settlement to Class Members on December 14, 2015 via U.S. first-class mail. Class Members who objected to the settlement or did not wish to participate had 60 calendar days within which to file an objection or a request for exclusion with the Claims Administrator. As of April 4, 2016, no objections or requests for exclusion from the settlement have been received.

In the Settlement Agreement, Defendants agree not to oppose an award of attorneys' fees up to 30% of the total settlement amount (i.e., $165,000), litigation costs of up to $20,000, and a Class Representative incentive award of $5,000.

## II.   Motion for Final Approval of Class Settlement

### A.   Legal Standard

Courts require a higher standard of fairness when settlement takes place prior to class certification to ensure class counsel and defendants have not colluded in settling the case. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Ultimately, "[t]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is

---

Agreement. *See* Doc. No. 52 (at the fairness hearing, Class Counsel informed the Court that one additional Class Member could not be contacted, bringing the total number listed in Doc. No. 52 to 66). The parties and the Court agree that the funds that would have been distributed to the 66 Class Members should instead be distributed equally among the rest of the Remaining Class.

fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

Courts consider several factors in determining whether a proposed settlement is "fair, reasonable, and adequate" under Rule 23(e). Such factors may include: (1) the strength of the case; (2) the risk, expense, complexity, and likely duration of further litigation and the risk of maintaining class action status throughout the trial; (3) the stage of the proceedings; (4) the settlement amount; (5) whether the class has been fairly and adequately represented during settlement negotiations; and (6) the reaction of the class to the proposed settlement. *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). The Court need only consider some of these factors—namely, those designed to protect absentees. *See Molski v. Gleich*, 318 F.3d 937, 954 (9th Cir. 2003) (overruled in part on other grounds).

Judicial policy favors settlement in class actions and other complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989).

### B.   Fairness Factors

#### 1.   Strength of the case, and the risk, expense, complexity, and likely duration of further litigation

To determine whether the proposed settlement is fair, reasonable, and adequate, the Court must balance the continuing risks of litigation (including the strengths and weaknesses of the Plaintiff's case), with the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In other words:

> The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, "It has been held proper to take the bird in hand instead of a prospective flock in the bush."

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citations omitted).

Plaintiff contends that he and the Class face significant risks if the litigation were to continue. For instance, Defendants will likely move for summary judgment as to the named Plaintiff. Additionally, Plaintiff asserts that class certification would pose a substantial challenge, that both liability and damages remain disputed, and that Defendants "will assert various defenses, including challenging Plaintiff's standing on injury and statute of limitations grounds." Accordingly, this factor weighs in favor of approving the settlement.

### 2. Risk of maintaining class action status through trial

Pursuant to Rule 23, the Court may revisit a prior order granting certification of a class at any time before final judgment. *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."). Where there is a risk of maintaining class action status throughout the trial, this factor favors approving the settlement. *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 976 (E.D. Cal. 2012) (finding that the complexity of the case weighed in favor of approving the settlement).

While Plaintiff believes that he would have strong argument for certifying a class, Defendants have argued that individualized issues will predominate because any overcharges that resulted from its pricing structure were inadvertent and limited to a small number of customers, and may involve consideration of each customer's pricing agreement with Defendants. Accordingly, this factor weighs in favor of settlement.

### 3. Stage of the proceedings

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *DIRECTV*, 221 F.R.D. at 528. In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "formal discovery is not a necessary ticket to the bargaining

1   table." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (quoting *In*
2   *re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir.1982)).

3       Based on the parties' representations, it appears the Settlement Agreement resulted
4   from arms-length negotiations during a private mediation before a retired judge, and was
5   not the result of collusion.  Although formal discovery was not conducted in this case,
6   Class counsel engaged in extensive investigation and informal discovery, including
7   analyzing pricing summaries from ten districts Defendants sold propane in, as well as the
8   raw data used to prepare the summaries.  Class Counsel also conducted confirmatory
9   discovery, including taking the deposition of Defendants' manager of central pricing,
10  prior to finalizing the Settlement Agreement.  This factor favors approval.

11              4.   <u>Settlement amount</u>

12      "In assessing the consideration obtained by the class members in a class action
13  settlement, it is the complete package taken as a whole, rather than the individual
14  component parts, that must be examined for overall fairness." *DIRECTV*, 221 F.R.D. at
15  527 (internal citation and alteration omitted).  "[I]t is well-settled law that a proposed
16  settlement may be acceptable even though it amounts to only a fraction of the potential
17  recovery that might be available to the class members at trial." *Id.* (citing *Officers for*
18  *Justice*, 688 F.2d at 628).

19      Pursuant to the Settlement Agreement, Defendants must establish a non-
20  reversionary Settlement Fund of $550,000 from which the Class Representative incentive
21  award, Class Counsel's fees and costs, the costs of settlement administration, and the
22  Class Member claims will be paid.  This will result in the High Volume Class receiving
23  approximately 78% of their alleged overcharges, and the Remaining Class receiving
24  approximately 84%.  If, after the settlement checks are disbursed, the total amount
25  remaining from any uncashed checks is sufficient to justify a second distribution, those
26  funds will be distributed on a pro-rata basis to the Class Members who did cash their
27  checks.  Otherwise, the funds will be donated via cy pres to California Rural Legal

28

1   Assistance, Inc.  No settlement funds will revert to Defendants.  This factor favors

2   approval.

3           5.   <u>Whether the Class has been fairly and adequately represented during</u>

4           <u>settlement negotiations</u>

5       "Great weight is accorded to the recommendation of counsel, who are most closely

6   acquainted with the facts of the underlying litigation.  This is because parties represented

7   by competent counsel are better positioned than courts to produce a settlement that fairly

8   reflects each party's expected outcome in the litigation."  *DIRECTV*, 221 F.R.D. at 528;

9   *Adoma*, 913 F. Supp. 2d at 977.

10      Class Counsel assert that they have experience litigating and settling consumer

11  class actions, including cases that involve false and misleading advertising and unfair

12  business practices.  It appears the Class was adequately represented by competent

13  counsel, so this factor supports approval of the settlement.

14          6.   <u>The reaction of the Class to the proposed settlement</u>

15      The Ninth Circuit has held that the number of class members who object to a

16  proposed settlement is a factor to be considered.  *Mandujano v. Basic Vegetable Prods.*

17  *Inc.*, 541 F.2d 832, 837 (9th Cir. 1976).  The absence of a large number objectors

18  supports the fairness, reasonableness, and adequacy of the settlement.  *See In re Austrian*

19  *& German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a

20  small number of objections are received, that fact can be viewed as indicative of the

21  adequacy of the settlement.") (citations omitted); *Boyd v. Bechtel Corp.*, 485 F. Supp.

22  610, 624 (N.D. Cal. 1979) (finding "persuasive" the fact that 84% of the class has filed

23  no opposition).

24      After receiving notice of the proposed settlement, none of the 706 Class Members

25  have objected or requested an exclusion.  Accordingly, this factor favors approval.

26  //

27  //

28  //

C.     **Conclusion**

Upon due consideration of the factors set forth above, the Court finds that the settlement is "fair, reasonable, and adequate" under Rule 23(e), and therefore **GRANTS** the Motion for Final Approval of Class Action (Doc. No. 49).

II.     **Motion for Award of Attorneys' Fees, Costs, and Class Representative Incentive Award**

Plaintiff seeks attorneys' fees of $165,000 (approximately 30% of the Settlement Fund), as well as litigation costs of $19,295.67, and a Class Representative incentive award of $5,000.

A.     **Relevant Law**

Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." A court has discretion to calculate and award attorneys' fees using either the lodestar method or the percentage-of-the-fund method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002).

The Ninth Circuit has held that 25% of the gross settlement amount is the benchmark for attorneys' fees awarded under the percentage method. *Id.* at 1047. "The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

With respect to the percentage method, case law surveys suggest that 50% is the upper limit, with 30–50% commonly being awarded in cases in which the common fund is relatively small. *See* Rubenstein, Conte and Newberg, *Newberg on Class Actions* at § 14:6. California cases in which the common fund is small tend to award attorneys' fees above the 25% benchmark. *See Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) (holding attorneys fees for large fund cases are typically under 25% and cases below $10 million are often more than the 25% benchmark).

Regardless of whether the Court uses the percentage approach or the lodestar method, the ultimate inquiry is whether the end result is reasonable. *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000). The Ninth Circuit has identified a number of factors that may be relevant in determining if the award is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases. *See Vizcaino*, 290 F.3d at 1048–50.

**B.     The Requested Attorneys' Fees Are Reasonable**

Class Counsel seeks an award of attorneys' fees under the percentage-of-the-fund method in an amount of $165,000, or approximately 30% of the Settlement Fund. The percentage-of-the-fund method appears appropriate in this common fund case, and Class Counsel's request appears reasonable given the high level of risk involved and the highly favorable result for the Settlement Class. The Court has also considered additional factors listed below.

### 1.     The results achieved are very good

The Class is receiving a very favorable outcome because the High Volume Class will receive approximately 78% of their alleged overcharges back and the Remaining Class will receive 84%. This translates to an average payment of approximately $10,300 to the seven High Volume Class Members, and an average payment of approximately $431 to the 633 Remaining Class Members. Accordingly, this factor favors approval of the requested attorneys' fees award.

### 2.     Continued litigation may have been risky

The original named plaintiff in this matter was compelled into arbitration, and there was a chance that the statute of limitations would bar the claims of current named Plaintiff William Beckman. Additionally, it is disputed whether Defendant's pricing practices constituted an actual statement or representation under California law, and it is not clear that Plaintiff's unlawful business practices claim under California's UCL could have been tied to a specific unlawful practice. Additionally, because Plaintiff's claims

1  ultimately relied in some part on individual agreements made between each individual
2  Class Member and Defendants, there was a substantial risk that Class Certification would
3  have been unobtainable.  Accordingly, this factor favors approval of the requested
4  attorneys' fees award.

5              3.      Counsel appear to have provided skilled and high quality work
6          Litigating this case and negotiating the proposed settlement involved significant
7  research and investigation by counsel, as well as informal discovery (including statistical
8  analysis and depositions), and a private mediation.  Accordingly, this factor favors
9  approval of the requested attorneys' fees award.

10             4.      Counsel worked on a contingent fee
11         Class Counsel bore the risk and cost of this litigation for nearly two years on a
12  contingency basis.  Counsel advanced all costs and deferred all payment of fees in this
13  case with no guarantee that their expenses would be recovered.  Litigating this case also
14  required counsel to forgo other fee generating work.  Accordingly, this factor favors
15  approval of the requested attorneys' fees award.

16             5.      The award is similar to those made in other cases
17         Although Ninth Circuit courts generally use a 25% benchmark as the starting point
18  for analysis under the percentage-of-the-fund method, courts frequently approve fee
19  awards above the benchmark.  Here, the amount of the common fund is relatively small,
20  so an award that is higher than the 25% benchmark is normal.  *See Craft*, 624 F. Supp. 2d
21  at 1127 (holding attorneys' fees for large fund cases are typically under 25% and cases
22  below $10 million are often more than the 25% benchmark); *Mason v. Heel, Inc.*, No.
23  3:12-CV-03056-GPC, 2014 WL 1664271, at *6 (S.D. Cal. Mar. 13, 2014) (awarding
24  30% of $1,000,000 common fund in case involving UCL and FAL claims regarding
25  homeopathic remedies).  Accordingly, this factor favors approval of the requested
26  attorneys' fees award.
27  //
28  //

6.    A lodestar cross-check supports the reasonableness of the award

Class Counsel requests a fee award of $165,000. To date, Class Counsel has provided itemized billing records showing an expenditure of more than 624 hours on this matter. Counsel's hourly rates range from $495 per hour to $695 per hour, and counsel has incurred fees in the amount of $354,140. "[C]ourts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases." *Vizcaino*, 290 F.3d at 1051. Counsel's requested award, even without a multiplier, is significantly less than what they may be entitled to under the lodestar method. Accordingly, this factor favors approval of the requested attorneys' fees award.

For these reasons, the Court **GRANTS** Plaintiff's request for attorneys' fees in the amount of $165,000.

**C.    Plaintiff's Costs Are Reasonable**

Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Class counsel are entitled to reimbursement of the out-of-pocket costs they reasonably incurred investigating and prosecuting this case. *See In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391–92 (1970)); *Staton*, 327 F.3d at 974.

Class Counsel's expenses include court filing fees, research costs, mediation-related expenses, attorney services costs, and travel expenses. *See* Doc. No. 47-1 at 16–18; Doc. No. 47-2 at 5. Accordingly, because Class Counsel's out-of-pocket costs were reasonably incurred in connection with the prosecution of this litigation, and were advanced by Counsel for the benefit of the Class, the Court **APPROVES** reimbursement of litigation costs in the amount of $19,295.67.

//

//

//

//

1

### D.    A Class Representative Incentive Award is Appropriate

2    "Incentive awards are appropriate only to compensate named plaintiffs for work

3   done in the interest of the class."  *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d

4   848, 854 (N.D. Cal. 2010) (citing *Staton*, 327 F.3d at 977).  Courts should ensure that an

5   incentive award is not based on fraud or collusion.  *Id.*

6    The only class representative in this case is Plaintiff William Beckman.  Mr.

7   Beckman appears to have spent a significant amount of time consulting with Class

8   Counsel and provided information that was important to counsel's understanding of the

9   case and ability to negotiate a fair settlement.  This award does not appear to be the result

10   of fraud or collusion.  Accordingly, the Court **APPROVES** the $5,000 service award as

11   reasonable.

12   **CONCLUSION**

13    For the reasons set forth above, the Court finds that the proposed class action

14   settlement is fair, adequate, and reasonable pursuant to Federal Rule of Civil Procedure

15   23(e), and therefore **GRANTS** Plaintiff's Motion for Final Approval of Class Action

16   Settlement (Doc. No. 49).  The Court further **GRANTS** Plaintiff's Motion for Attorneys'

17   Fees, Costs, and Class Representative Incentive Award (Doc. No. 47) and **APPROVES**

18   Plaintiff's requests as follows:

19    1.    Class Counsel shall receive an award for attorneys' fees in the amount of

20     $165,000;

21    2.    Class Counsel's litigation costs shall be reimbursed in the amount of

22     $19,295.67; and

23    3.    Class Representative William Beckman shall receive an incentive award in

24     the amount of $5,000.

25   //

26   //

27   //

28   //

### JUDGMENT AND ORDER OF DISMISSAL

The Court **APPROVES** the settlement and **ORDERS** the parties to implement the Settlement Agreement according to its terms and any additional conditions set forth in this Order.

1. The Settlement Class covered by this Order is defined as:

All Heritage Operating, L.P. laid-in cost based customers in California who purchased propane during the relevant Class Period, and who did not purchase propane from Defendants after August 31, 1012, provided however, that the Settlement Class shall not include persons or entities excluded pursuant to Paragraph 13 of the Settlement Agreement.

2. Pursuant to this Court's November 23, 2015 Order Granting Motion for Preliminary Approval of Class Action Settlement and Approving Notice to the Class (Doc. No. 45), a Notice of Pendency of Class Action was sent to each Class Member by first-class mail. The notice informed Class members of the terms of the Settlement, their right to object to the Settlement or elect not to participate in the Settlement and to pursue their own remedies, and their right to appear in person or by counsel at the Final Approval Hearing and be heard regarding approval of the Settlement. Adequate periods of time were provided for each of these procedures. No Class Members filed written objections to the Settlement or stated an intent to appear at the Final Approval Hearing.

3. The Court finds and determines that the notice procedure afforded adequate protections to Class Members and provided the best notice practicable. The notice satisfied the requirements of law and due process.

4. The Court has determined that the proposed Settlement Class, as defined above, meets all of the legal requirements for class certification, and it is hereby **ORDERED** that the Settlement Class is finally approved and certified as a Class for Purposes of Settlement of this Action.

5. The Court further finds and determines that the terms of the Settlement are fair, reasonable, and adequate as to each Class Member, that Class Members shall be bound by the Settlement, and **ORDERS** that the Settlement is finally approved, and that all terms and provisions of the Settlement shall be consummated.

6.     The Court finds that the Claims Administrator, CPT Group, Inc. has complied with the notice requirements of the Class Action Fairness Act, 28 U.S.C. § 1715(b).

7.     The Court finds and determines that the payments to be made to the Settlement Class are fair and reasonable.  The Court **ORDERS** that payments be made to the Settlement Class Members out of the $550,000 Settlement Fund in accordance with the terms of the Settlement.

8.     The Court further finds and determines that pursuant to the parties' agreement and paragraph 18.3 of the Settlement Agreement, total payments in the amount of $27,183.21 that are due to the 66 Remaining Class Members whose notices were deemed undeliverable shall be preemptively redistributed ratably to the 633 Remaining Class Members whose notices were delivered.

9.     The Court **GRANTS** the application presented by Class Counsel for an award of attorneys' fees in the amount of $165,000 and reimbursement of litigation costs in the amount of $19,295.67, pursuant to paragraph 21 of the Settlement Agreement.

10.     The Court hereby **APPROVES** the application for a Class Representative incentive award in the amount of $5,000 to Plaintiff William Beckman, pursuant to paragraph 24 of the settlement.

11.     Upon completion of administration of the Settlement, the Settlement Administrator will provide written certification of such completion to the Court and counsel for the parties.

12.     Pursuant to the Settlement, Plaintiff William Beckman and all other members of the Settlement Class, and their heir, executors, administrators, spouses, domestic partners, attorneys, successors, and assigns, are permanently barred from prosecuting any and all Released Claims, as defined in the Settlement Agreement, against Defendants, their divisions and business units, and any of their past, present, or future parent entities, associates, affiliates, subsidiaries, and licensees, and each and all of their past, present, and future officers, directors, stockholders, principals, employees, advisors,

agents, attorneys, financial or investment advisers, consultants, lenders, insurers, investment bankers, commercial bankers, representatives, joint ventures, general and limited partners and partnerships, heirs, executors, trustees, personal representatives, estates, administrators, trusts, licensees, licensors, distributors, subdistributors, predecessors, successors, and assigns.

13.   The parties are hereby **ORDERED** to comply with the terms of the Settlement Agreement.

14.   This action, including the claims alleged in the complaint filed with this action, is hereby **DISMISSED with prejudice**, each side to bear its own costs and attorneys' fees, except as provided by the Settlement Agreement and this Order.

15.   Without affecting the finality of this Order, the Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation, and enforcement of this Order and the Settlement.

**IT IS SO ORDERED.**

Dated:  April 14, 2016

Hon. Michael M. Anello
United States District Judge